## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

Case No._____

ELANCO ANIMAL HEALTH INC. and
ELANCO ANIMAL HEALTH GMBH,

     Plaintiffs,

v.

Pet IQ, LLC,

     Defendant.

_____/

## COMPLAINT FOR PATENT INFRINGEMENT
## AND DEMAND FOR JURY TRIAL

Plaintiffs, Elanco Animal Health, Inc. ("Elanco Inc.") and Elanco Animal Health GMBH ("Elanco GMBH") (collectively "Plaintiffs" or "Elanco"), by their undersigned counsel, file this Complaint for Patent Infringement against   Defendant Pet IQ, LLC, ("Defendant" or "Pet IQ"), and allege as follows:

## NATURE OF THE ACTION

This is a civil action for the infringement of U.S. Patent No. 7,910,122 ("the Asserted Patent" or "the '122 patent") under 35 U.S.C. § 271, brought by Elanco against Pet IQ. A contemporaneously- filed suit for infringement of the '122 patent has been brought against Pet IQ's subsidiary or otherwise related company, Sergeant's Pet Care Products, LLC ("Sergeant's"), in the United States District Court for the District of Nebraska.

## PARTIES

1.      Elanco Inc. is an Indiana incorporation with its headquarters and principal place of business at 2500 Innovation Way, Greenfield, Indiana, 46140. Elanco GMBH is a German corporation having its principal place of business at Alfred-Nobel-Strasse 50, 40789 Monheim am Rhein, Germany, and is an indirect, wholly-owned subsidiary of Elanco Inc. For more than 70 years, Elanco has been committed to transforming animal care by empowering veterinarians, farmers, and animal health professionals. As a global leader in animal health, Elanco provides innovative solutions to improve animal health and well-being.

2.      Upon information and belief, Pet IQ is a Florida corporation with a principal place of business at 530 Fentress Blvd, Daytona Beach, Florida 32114, in this judicial district.

3.      Upon information and belief, Pet IQ is the parent company of, or is otherwise legally related to, Sergeant's. As such, Sergeant's is a privy of Pet IQ, at least for purposes referenced herein, including 35 U.S.C. § 315.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) because it arises under the United States Patent Act, 35 U.S.C. §1 *et. seq.*

5.      This Court may exercise personal jurisdiction over Pet IQ on the basis that Pet IQ is a Florida corporation and operates at an address in this judicial district (530 Fentress Blvd, Daytona Beach, Florida 32114).

6.    Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1)-(2) and §1400(b). Upon information and belief, Pet IQ has transacted business in this district, has a regular and established place of business in this district, and has committed and/or induced acts of patent infringement in this district.

## PATENT-IN-SUIT

7.    On March 22, 2011, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 7,910,122, titled Active Compound-Containing Solid Moulded Bodies for External use Against Parasites on Animals ("the 'Asserted Patent" or "the '122 Patent"). A copy of the '122 Patent is attached as Exhibit A.

8.    The '122 Patent is valid and enforceable until September 16, 2027.

9.    Elanco GMBH is the owner of all right, title, and interest in the '122 Patent and Elanco Inc. is authorized to commercialize the '122 Patent. Collectively, Elanco have the right to sue for infringement of the '122 Patent. The allegations of patent infringement herein are supported by the '122 Patent Claim Chart submitted herewith as Exhibit B.

## BACKGROUND

10.    Elanco is dedicated to making animals' lives better, because Elanco believes that making their lives better makes life better for all. One of Elanco's product lines that has been making life better for companion animals for years is Elanco's innovative SERESTO® line of collars for dogs and cats. As of July 2025, over 41 million SERESTO® collars have been sold in the United States since 2012.

3

11.    Elanco's innovative, first in class, SERESTO® collars have been recognized by the issuance of sixty (60) patents worldwide. In the United States, the United States Patent and Trademark Office ("USPTO") specifically recognized that the composition and method of using Elanco's SERESTO® collars were "new and useful", were "novel", and were not "obvious". 35 U.S.C. §§ 101, 102 and 103. As such, on March 22, 2011, the USPTO granted the '122 Patent (Exhibit A hereto). The '122 patent is currently enforceable and will not expire until September 16, 2027.

12.    Elanco's SERESTO® brand similarly enjoys worldwide recognition and protection with 78 trademark registrations in 53 countries, including the United States. In addition to the patents and trademarks that protect Elanco's SERESTO® collars and brand, other statutory and/or common law intellectual property rights such as, e.g., trade dress, and/or trade secrets, provide additional protection in various jurisdictions, including the United States.

13.    Elanco's innovative SERESTO® collars for dogs and cats were developed through years of research, clinical development, testing, and stringent regulatory review. The collars have now been validated over the years by customers worldwide.

14.    Elanco's enforcement of its '122 Patent rights is to ensure that no so called "generic" gains a head-start over and against other potential "generics". Until Elanco's '122 Patent expires on September 16, 2027, no infringing copycat products should be allowed to jump the gun and unfairly compete to gain market share.

15.    Elanco has actively engaged in a variety of enforcement actions to protect its brand and its intellectual property. For example, to police and protect its SERESTO® brand, in recent years Elanco has filed forty trademark Opposition, Cancellation, and/or Invalidation actions. Similarly, in just the last three years, Elanco has mounted an aggressive anticounterfeiting initiative resulting in the seizure of counterfeit products worth multiple millions of dollars. Below is an image of Elanco's SERESTO® product and packaging. (See Exhibit C).



16.    As noted on the packaging (Exhibit C), SERESTO® collars contain the active ingredients flumethrin (4.5%) and imidacloprid (10%), which are impregnated into a polymer matrix system. The matrix is designed to release the two active ingredients continuously onto the dog's or cat's hair coat and skin throughout an eight-

month application period, at which point, pursuant to the label instructions, the collar should be removed and a new collar applied.

17.    Elanco and/or its predecessor is the original registrant at the EPA of a pesticide product containing flumethrin and imidacloprid, which was approved for use in connection with Elanco's SERESTO® collars in 2012.  Beginning in 2010, Elanco and/or its predecessor submitted extensive data, including efficacy, toxicology and other safety data, to the EPA.  Much of that data remains within a 15-year window in which it cannot be considered by the EPA in support of another company's Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") registration application unless a valid offer to pay is made to Elanco, in conformity with FIFRA and its implementing regulations.

18.    Elanco understands the EPA has approved Sergeant's FIFRA registration applications for dog and cat collars containing flumethrin and imidacloprid.  See Exhibits D and E, respectively.  Elanco has reviewed the National Pesticide Information Retrieval System ("NPIRS") database and EPA's Pesticide Data Submitter List, which reveal that while Sergeant's submitted various product chemistry data to the EPA to support registration of those pet collars, it has apparently not submitted any efficacy, toxicology or companion animal safety studies of Sergeant's/Pet IQ's Pet Armor Extend products.  Efficacy, toxicology and companion animal safety studies would be required to register a pet collar containing flumethrin and imidacloprid.

6

19.     Sergeant's sought to rely on Elanco's data for these purposes. Elanco received three letters from Sergeant's dated March 17, 2022, offering to pay Elanco for use of Elanco's data on file with the EPA to support the registration of Sergeant's pet collars containing flumethrin and imidacloprid.

20.     On information and belief, Sergeant's and the EPA relied on Elanco data relating to efficacy, toxicology or companion animal safety of its SERESTO® collars in connection with the recently-granted EPA registrations.

21.     On information and belief, Pet IQ/Sergeant's EPA registrations relied on data generated for Elanco's SERESTO® product approval, due to the complicated nature of SERESTO's patented polymer matrix and its impact on the release of the active ingredients, affecting both safety and efficacy. Elanco has submitted dozens of SERESTO® efficacy, toxicology and companion animal safety studies to the EPA for their review. There is no indication that Pet IQ/Sergeant's has submitted efficacy, toxicology or companion animal safety studies for Pet IQ/Sergeant's Pet Armor Extend collars.

22.     In July 2025, Elanco became aware for the first time that Pet IQ (via its wholly-owned subsidiary Sergeant's) received notice of EPA registration for a flea and tick collar for dogs. (See Exhibit D).

23.     At that same time, Elanco became aware for the first time Pet IQ/Sergeant's received notice of EPA registration for a flea and tick collar for cats. (See Exhibit E).

24.    Upon information and belief Pet IQ/Sergeant's are and have been aware of the fact that Elanco's SERESTO® product formulation and methods of treatment are patent protected under the '122 Patent.

25.    Pet IQ filed Inter Partes Review No. IPR2022-00304 ("the '304 IPR") on December 12, 2021, in which it unsuccessfully challenged the validity of the claims in Elanco's '122 Patent. In accordance with 35 USC § 315, Pet IQ and its subsidiary and privy, Sergeant's, are estopped from raising any invalidity defense to the allegations of infringement of the '122 Patent based on any ground raised or which reasonably could have been raised in the '304 IPR.

26.    Based on its filing of the '304 IPR, there is no dispute that Pet IQ was aware of the '122 Patent long before the conduct complained of herein.

27.    Long before the conduct of Pet IQ/Sergeant's complained of herein, on information and belief Sergeant's was aware of the '122 Patent and was also an intended beneficiary of Pet IQ's actions in filing the '304 IPR.

28.    As shown in the attached Exhibits F and G the packaging for the Pet Armor Extend Accused Product for dogs and cats boast of "contains imidacloprid and flumethrin, the same active ingredients used in SERESTO®".

29.    Remarkably, on or about August 13, 2025, more than two years before the expiration of the '122 Patent on September 16, 2027, Pet IQ/Sergeant's began offering the Accused Products for sale at the SuperZoo trade show ("SuperZoo") in Las Vegas, Nevada. SuperZoo is "North America's largest marketplace for the pet

industry. This is the destination for pet professionals to find debut products". (See https://www.superzoo.org).

30.    The Pet IQ website (petiq.com/manufacturing/) states "We manufacture more than 85% of our non-consumable products, including our category- leading flea and tick formulations…on site in our Nebraska facility."  Nebraska is where Sergeant's is located. Moreover, on its website listing of pet product core brands (petiq.com/pet-products/), both Pet Armor and Sergeant's are listed. Similarly, the Sergeant's website (sergeants.com) states "Meet Our Family" and identifies both Pet IQ and Pet Armor, among other brands. (See Sergeant's website excerpt below). Furthermore, as also seen below, the Sergeant's website concludes with a copyright notice identifying Pet IQ, LLC as the copyright owner.

## MEET OUR FAMILY

PET IQ    ADVECTA    CAPSTAR    MiNTiES    NEXTSTAR

PETARMOR.    SENTRY    Sergeant's    VET IQ

Copyright ©2022-2024 PetIQ, LLC. All rights reserved.    Privacy Notice    Cookie Policy    Terms of Use    Cookie Consent Tool

31.    As depicted in the image below (see also Exhibit H), the packaging associated with the Accused Products being offered for sale at SuperZoo state "Manufactured for" Sergeant's. On information and belief, the Accused Products at

9

SuperZoo had previously been "made" for Sergeant's. Under the United States Patent Laws, acts of infringement include making, using, selling, offering to sell, and importing infringing products. On information and belief, the Accused Products at SuperZoo had previously been "made" and were being offered for sale at the show.



32.    Shown below is an excerpt of the Accused Product labeling (see Exhibit I), which shows the details of the active ingredients. As noted in the attached Exhibit B Claim Chart, the accused Pet Armor Extend products for cats and dogs utilize the same active ingredients claimed in the '122 Patent and which are also found in the SERESTO® product, in exactly the same amounts! The percentage of the active

ingredients based on the Pet Armor Extend labeling fall squarely within the ranges set forth in the '122 Patent claims (See Exhibit B Claim Chart).



33.    Upon information and belief, Pet IQ either has made, used, sold, or offered for sale the Accused Products in the United States.

34.    Upon information and belief, Pet IQ intends to offer the generic Accused Products at a significantly lower price point than Elanco's patented SERESTO® product, which, absent relief from this Court, will lead to irreparable price erosion for Elanco's patent-protected SERESTO® product.

**COUNT I:**

***Pet IQ's Infringement of the '122 Patent under 35 U.S.C. § 271***

35.    Elanco incorporates Paragraphs 1- 34 by reference as if fully incorporated here.

11

36.     Upon information and belief, Pet IQ has infringed and continues to infringe within the meaning of 35 U.S.C. § 271 by, without Elanco's authority, importing, making, using, selling, and/or offering to sell in the United States one or more products covered by one or more claims of the '122 Patent. Specifically, the Accused Products in this case are Pet Armor Extend flea and tick collars for cats and dogs and those Accused Products, and their method of use, infringe claims 1-3 of the '122 Patent either literally, or under the doctrine of equivalents, as detailed in the Exhibit B Claim Chart.

37.     Pet IQ's/Sergeant's own product labels, recent EPA registrations, and SuperZoo displays demonstrate Pet IQ has directly and/or indirectly infringed claims 1 and 3, of the '122 Patent in violation of 35 U.S.C. § 271 by importing, making, using, offering for sale, and/or selling the infringing Pet Armor Extend flea and tick collars for dogs and cats, in accordance with Elanco's patented composition and method, without authorization from Elanco. Moreover, Pet IQ is inducing customers to infringe claim 2 of the '122 Patent by practicing the patented method of controlling parasites on animals using the patented formulation.

38.     According to the Pet Armor Extend product label (see Exhibit I), the Accused Products comprises the following formula:

> Flumethrin 4.5%
> Imidacloprid 10.0%
> Other Ingredients 85.5%

39.     Claim 1 of the '122 Patent calls for a composition including Flumethrin at "about 1% to about 20%" and Imidacloprid at "about 1% to about 20%". As admitted in Exhibit I, the Accused Products fall squarely in the claimed ranges.

40.     A chart detailing how the Pet Armor Extend products infringe claims 1-3 of the '122 Patent is attached as Exhibit B.

41.     Upon information and belief, based on the foregoing and Exhibit B, the Pet Armor Extend product includes all of the limitations of Claim 1 and 3 of the '122 Patent, either literally or under the doctrine of equivalents, and thus the Accused Products are direct infringements. Additionally, use of the Accused Products by customers infringes method claim 2 of the '122 Patent and Pet IQ is liable for inducing infringement of the '122 Patent claim 2.

42.     By selling and/or offering for sale the Accused Products in the United States to customers, Pet IQ specifically intends and directs that others use the Accused Products in an infringing manner, thereby inducing infringement of the '122 Patent pursuant to 35 U.S.C. § 271(b).

43.     Upon information and belief, Pet IQ's infringing acts will continue unless restrained and enjoined by this Court.

44.     Upon information and belief, based on Pet IQ's prior knowledge of the '122 Patent, Pet IQ's acts of infringement are willful.

45.     Elanco has been and will continue to be irreparably harmed by Pet IQ's infringement of the '122 Patent.

46. Pet IQ's infringement of the '122 Patent has caused and is continuing to cause Elanco to suffer irreparable harm, which harm is not fully compensable by monetary damages, and Elanco is entitled to injunctive relief to prevent further infliction of such harm.

47. Elanco has or will suffer monetary damages as a result of the direct and indirect infringing activities of Pet IQ and will continue to suffer damages as long as those infringing activities continue.

48. Elanco is entitled to recover damages adequate to compensate Elanco for Pet IQ's infringement of the '122 Patent.

49. By virtue of at least the filing of this Complaint, Pet IQ has actual notice of the '122 Patent and the grounds for infringement, such that any future infringing acts will be willful.

## REQUEST FOR RELIEF

WHEREFORE, Elanco respectfully requests the following relief:

1. A judgment that Defendant Pet IQ has directly infringed one or more claims of the Asserted Patent, and/or that Defendant Pet IQ has indirectly infringed one or more claims of the Asserted Patent by way of inducing direct infringement by its customers;

2. Entry of a preliminary and a permanent injunction restraining and enjoining Defendant Pet IQ, its officers, agents, employees, and those persons in privity with them and those acting in active concert or participation with Defendant

Pet IQ, from any further direct or indirect infringement of the '122 Patent for the full term thereof, including any extensions, pursuant to 35 U.S.C. § 283;

3. An Order instructing Defendant Pet IQ to destroy:

    i.    Any and all remaining Accused Products;

    ii.    Any and all products created or derived from the Accused Products; and

    iii.    Any and all scientific or regulatory data and analysis generated as a result of Defendant Pet IQ's use of Accused Products or any product created or derived from the Accused Products;

4. An Order instructing Defendant Pet IQ to file with this Court and serve upon Elanco a report in writing and under oath setting forth in detail the manner and form in which Defendant Pet IQ has complied with any preliminary or permanent injunction or Order resulting from this case within thirty (30) days after entry of such preliminary or permanent injunction or Order;

5. A judgment that Elanco be awarded all appropriate damages under 35 U.S.C. § 284 for Defendant Pet IQ's past infringement and any continuing or future infringement of the '122 Patent, up until the date such judgment is entered, including pre- and post-judgment interest, costs, and disbursements pursuant to 35 U.S.C. § 284;

6. A finding that Defendant Pet IQ's infringing acts are willful, and an accompanying award of treble damages pursuant to 35 U.S.C. § 284;

7. A finding that this action is an exceptional case under 35 U.S.C. § 285 such that Elanco be awarded costs and expenses, including reasonable attorneys' fees, that Elanco incurs in prosecuting this action; and

8.    A judgment or award of such other and further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Elanco demands a jury trial on all claims and issues so triable.

Dated: August 22, 2025                    Respectfully submitted,


*/s/ Elizabeth G. McIntosh*
Nina Greene, Esq.
Florida Bar No. 72079
ngreene@venable.com
Elizabeth G. McIntosh, Esq.
Florida Bar No. 1011555
egmcintosh@venable.com
VENABLE LLP
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Telephone:   (305) 349-2300
Facsimile:    (305) 349-2310

and

Gregory F. Ahrens, Esq.
(*pro hac vice motion forthcoming*)
Wood Herron & Evans, LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
Telephone: (513) 241-2324
gahrens@whe-law.com

*Attorneys for Plaintiffs Elanco Animal Health Inc. and Elanco Animal Health GMBH*